Dear Mr. Babin:
Reference is made to your request for an opinion of this office regarding the legality of the Parish of Ascension entering into a contract (the "Contract") with a private company, namely The Ascension Channel, LLC ("APTV"), with respect to operation of the Parish's `Governmental Access Channel'. Specifically, with respect to the Contract, your letter requires this office to address the following questions:
 1) Can Ascension Parish contract with a private for-profit entity, and pay the private entity a fee, for operation of a government access channel?
 2) Can the Parish authorize the private entity to air its own programs on the governmental access channel?
 3) Can the Parish grant the private entity the exclusive right to sell commercial advertising and air time on the government access channel, and allow the private entity to retain the proceeds of such sales?
In accordance with our research, "Public, educational and governmental ("PEG") access channels" are not mandated by federal law but are a right given to the Parish, as a franchising authority, the requirement for which must be set out in the franchising agreement between a franchising authority and a cable operator. In other words, the federal Cable Act,47 U.S.C. Sec. 521, et seq., provides authority for a franchising authority such as Ascension Parish, to require a cable operator to whom it has granted a franchise agreement to provide the franchising authority with PEG channels, including a "G" or Governmental Access Channel. The Cable Act also provides for the prescription of:
 "(1) rules and procedures under which the cable operator is permitted to use such channel capacity for the provision of other services if such channel capacity is not being used for the purposes designated, and (2) rules and procedures under which such permitted use shall cease."
It is important to note that although the right to demand a Governmental Access Channel stems from federal law, the terms and conditions regarding use of the operation and use of the Governmental Access Channel are generally set forth in and must be exercised in accordance with the terms and conditions of the franchise agreement negotiated by and between the franchising authority and the cable operator.
With respect to the first question, it is our understanding that the Parish of Ascension, as franchising authority, has entered into a franchising agreement with Cox Communications Central II ("Cox"), as cable operator. Apparently, as required by the franchise agreement, Cox has dedicated one channel on its cable system for governmental access from Ascension Parish. In turn, the Parish has entered into the Contract with APTV for operation of the governmental access channel.
We are aware that in many, if not most instances, PEG access channels are operated either directly by the franchising authority or by a non-profit entity formed for that purpose. However, our research did not reveal, nor are we aware of, any provision of law which would prohibit Ascension Parish from contracting with a private entity for the operation of the government access channel, or which would require such operation to be handled by the Parish itself or by a non-profit entity. Accordingly, in response to the first question, it is the opinion of this office that Ascension Parish can contract with a private entity such as APTV, and pay that private entity a fair and reasonable fee, commensurate with the services received, for operation of the Ascension Parish government access channel.
With respect to the second and third questions, please be advised that our research did not reveal any federal or state statute or rule which specifically precludes commercial programming, including the channel operator's own programming, or programming sold by the channel operator, on government access channels. This is not to say that no limitations exist; rather, that this is an area that is not heavily regulated by either the federal government, or in the State of Louisiana, by state government.
As previously noted, although a franchising authority's right to demand a Governmental Access Channel stems from federal law, the terms and conditions regarding the operation and use of a Governmental Access Channel are generally set forth in the franchise agreement negotiated by and between the franchising authority and the cable operator. Including applicable limitations on a franchise authority's use of a PEG channel in the franchise agreement comports with the apparent intent of Congress as expressed in the Cable Act.
You have graciously provided the undersigned with a copy of both the Contract, and the Franchise Agreement by and between Ascension Parish and Cox, and we note that the Franchise Agreement does contain provisions referring to the "non-commercial" use of the government access channel. Respectfully however, we must advise that it is beyond the purview of this office to opine upon the validity or enforceability of the provisions of ongoing and existing contracts entered into and agreed upon by local governmental entities. We can, however, provide you with certain citations which we believe may be relevant to your inquiry, and which may assist you in advising your client, the Parish of Ascension.
Time Warner Cable of New York City v. Bloomberg L.P., 118 F.3d 917 (2d Cir. 1997) provides some guidance with respect to the airing of commercial programming on PEG channels. The Time Warner decision contains a great deal of comment and discussion regarding Congress's intent with respect to what "PEG" channels are, and the nature of programming to be aired on the channels the Cable Act requires cable operators to reserve for use by franchising authorities such as Ascension Parish.
Notably, the Time Warner decision did not decide the meaning of the word "commercial" as used in the franchise agreements which were the subject of that litigation. Rather, the court stated:
 ". . . whatever the [Franchise] Agreements mean, they do not authorize the City to use Crosswalks [a PEG channel] for programming beyond the categories of "educational" and "governmental" as those terms are used in the Act . . ."
and that the franchise agreements:
 ". . . were drafted to implement the City's authority, expressly conveyed by the [federal Cable Act], to require Time Warner to reserve channels for PEG use."
Most pertinently, the Time Warner decision states:
 "Congress also made it clear that, contrary to the City's contention, a "G" channel is not available for any use that the City wishes to make of it. Not only did Congress indicate what it generally contemplated would appear on PEG channels, but it also indicated that it would be inappropriate for the franchising authority to treat PEG channels as commodities to be traded to the highest bidder: "[T]he Committee does not intended that franchising authorities lease governmental channels to third parties for uses unrelated to the provision of governmental access." H.R. Rep. No. 98-934, at 47 (1984), reprinted in 1984 U.S.C.C.A.N. 4655, 4684." (Emphasis supplied by the court)."
Also pertinent is Goldberg v. Cablevision Systems Corporation,261 F 3d 318 (2dCir. 2001), which, along with Time Warner, indicates that the Cable Act does not give a franchisor/governmental entity the right to use a "G" channel for `non-governmental' purposes.
Notably, both Time Warner and Goldberg leave unsettled the definitions of the words "governmental" and "commercial" as used in the Cable Act. Furthermore, although clearly a cable operator cannot be required to do so, we note that neither case addresses the issue of whether or not a cable operator can, in spite of the Act, provide a franchise authority with the right to air "commercial" programming on a governmental access channel.
We trust the foregoing to be of assistance to you, and to the Parish of Ascension. Please do not hesitate to contact us if we can be of assistance in other areas of the law.
 Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
 BY: ____________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
 CCF, jr./JMZB/dam